UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 07-4621(DSD/JJG)

Mike Kirkeberg,

       Plaintiff,

v.                                    **ORDER**

Canadian Pacific Railway,

       Defendant.

       Michael B. Chase, Esq. and Chase Law Office, 101 Fifth Street East, Suite 2102, St. Paul, MN 55101, counsel for plaintiff.

       Thomas J. Conley, Esq., Rebecca L. Neubauer, Esq., Elizabeth A. Papacek, Esq. and Leonard, Street and Deinard, P.A., 150 South Fifth Street, Suite 2300, Minneapolis, MN 55402, counsel for defendant.

       This matter is before the court upon defendant's motion for summary judgment. Based upon a review of the file, record and proceedings herein, and for the reasons stated, the court grants defendant's motion.

**BACKGROUND**

       This employment dispute arises out of the May 14, 2007, elimination of plaintiff Mike Kirkeberg's ("Kirkeberg") position as administrator of the employee assistance program ("EAP") at defendant Canadian Pacific Railway ("Canadian Pacific"). Kirkeberg

began working at Canadian Pacific in April 2000, and was fifty-nine years old in May 2007.

Kirkeberg's job responsibilities evolved and expanded during his tenure at Canadian Pacific.  At the time of his termination, Kirkeberg provided initial screening, counseling and referrals to Canadian Pacific employees who were having mental health, substance abuse and family problems; trained supervisors on drug and alcohol issues; developed and managed a network of substance abuse professionals; developed Canadian Pacific's critical incident program; and trained employees and supervisors on the EAP. Kirkeberg also wrote Canadian Pacific's policies for drugs, alcohol and the EAP.  The EAP was available to 3,500 Canadian Pacific employees and their families throughout several Midwestern states, Pennsylvania, New Jersey and New York.[1]  Kirkeberg was often contacted by Canadian Pacific employees outside of regular business hours.  Canadian Pacific also contracted with an organization called Well Place to provide nonbusiness-hour support at a cost of $1,200 a month.  (Kirkeberg Dep. at 10-12.)

In December 2002, Darrell Ward ("Ward"), Kirkeberg's former supervisor, filed a complaint against Canadian Pacific with the Equal Employment Opportunity Commission ("EEOC") after he was not promoted to be director of the casualty management and health services division.  Canadian Pacific hired Greg Simmons ("Simmons")

---

[1] The last three states were added early in 2002.

for the position.   Ward stopped working for Canadian Pacific in April 2003, and brought an age discrimination action in December 2003.   Kirkeberg was listed on Ward's pretrial disclosures as an individual with potentially relevant information.   (Chase Aff. Ex. 2.)   The matter settled in November 2004.   Before Ward left Canadian Pacific, Kirkeberg continued to speak with him and told others at Canadian Pacific, including Simmons, that Ward received unfair treatment.   Simmons responded to Kirkeberg's comment with hostility.   (Kirkeberg Dep. at 83.)   After Ward's departure, Kirkeberg reported directly to Simmons.

Throughout the course of Simmons's supervision of Kirkeberg, Simmons repeatedly asked for information about employees who were participating in the EAP.   Kirkeberg considered this information confidential and refused Simmons's requests.[2]

In January 2006, Kirkeberg was diagnosed with a central retinal vein occlusion in his left eye, leaving him legally blind in that eye.   Soon thereafter, he began wearing a patch over his left eye at work.   Kirkeberg has poor sight in his right eye, but with a corrective lens his vision in that eye is close to normal.[3]

---

[2] The only written example of such a request is a November 13, 2006, email from Simmons to Kirkeberg requesting "a list of employees in treatment and expected discharge [date]." (Conley Aff. Ex. F.)

[3] Kirkeberg's eyesight in his right eye is correctable to 20/25 or 20/30. (Kirkeberg Dep. at 52; Kirkeberg Aff. Ex. 2.)

On February 2, 2006, Kirkeberg's doctor wrote that the blindness in Kirkeberg's left eye was causing him "significant difficulties at work, seeing and significant eye strain." (Kirkeberg Aff. Ex. 2.)  The doctor further noted that as Kirkeberg "acclimates to the vision loss in his left eye the strain will become less on his right eye but for now I think it would benefit him significantly to have a shorter work week." (Id.)  Kirkeberg gave the doctor's letter to Simmons.  (Kirkeberg Dep. at 70.)

Infections prohibited Kirkeberg from wearing a contact lens in his right eye during February and March 2007.  This prevented him from driving and caused him to have greater difficulty reading and walking.  (Kirkeberg Aff. ¶ 6.)  As a result of his monocular vision, Kirkeberg tires easily when reading, is less able to navigate while walking, no longer rides a bike and goes to the movies less frequently.  Nevertheless, Kirkeberg remained able to perform his job at Canadian Pacific but requested a larger computer monitor, reconfiguration of his office, better lighting and the option to work from home on certain days or work a shorter week. Canadian Pacific provided a larger monitor in March 2007, but did not act on the other requests.

In December 2006, Kirkeberg told Simmons that he had hepatitis C and was going to be away from work for a few days for a liver biopsy.  Kirkeberg also mentioned that he was considering treatment that would affect his ability to work over the summer.  Kirkeberg

alleges that thereafter Simmons treated him like he was "invisible." (Kirkeberg Dep. at 47-48.) Around that same time, Simmons began thinking about outsourcing the EAP function. (Simmons Dep. at 85.)

In February 2007, Kirkeberg was given his annual bonus and a salary increase. At that time, Kirkeberg also began reporting directly to Karen DeTuncq ("DeTuncq"). As a result, Kirkeberg informed DeTuncq that he had hepatitis C and was considering treatment. In February or March 2007, DeTuncq recommended that Kirkeberg apply for leave pursuant to the Family and Medical Leave Act ("FMLA") because of the frequency of his eye appointments and the impending hepatitis C treatment. Kirkeberg requested and completed the FMLA paperwork in March but never submitted it for processing because other Canadian Pacific employees who missed several days of work were allegedly not required to take FMLA leave and he felt like he was "being treated like a second class citizen." (Kirkeberg Dep. at 75.) DeTuncq told Simmons that she had advised Kirkeberg to apply for FMLA leave. (DeTuncq Dep. at 59.)

On March 5, 2007, after Kirkeberg's office was broken into and his computer was stolen, he mentioned to Simmons that the computer would not have been stolen if Simmons had allowed him to work from home. Simmons became upset and told Kirkeberg that nobody would work from home unless Simmons could. That same day, Simmons

emailed his supervisor, Glen Wilson ("Wilson"), requesting a meeting to discuss outsourcing the EAP. (Conley Aff. Ex. I.)

After speaking with Wilson, Simmons emailed Wilson's supervisor, Jim Cunningham ("Cunningham"), on March 9, 2007, with a proposal to outsource the EAP to a company called Inova. According to Simmons, contracting with Inova would have reduced the cost of the EAP by $54,000 annually. Simmons cautioned, however, that the cost reduction alone would not justify the change if the EAP benefits decreased or the program was otherwise harmed. (Id. Ex. B.) Cunningham and Cathy Frankenberg ("Frankenberg"), Canadian Pacific's vice president for labor relations and human resources, later approved Simmons's request for a reduction in force. (Id. Ex. K; Simmons Dep. at 128.) Simmons notified Kirkeberg on May 14, 2007, that Kirkeberg's position had been eliminated.[4] (Conley Aff. Ex. N.)

After soliciting requests for proposals, Canadian Pacific contracted with Well Place in early 2008 to administer the EAP.[5] (Simmons Dep. at 116-17.) Canadian Pacific allegedly selected Well Place based upon its past performance, geographic scope, availability of a staff medical doctor and psychiatrist, around-

---

[4] DeTuncq did not participate in discussions about outsourcing the EAP and she was first notified of the decision on May 14.

[5] Well Place provided services between the time Kirkeberg was terminated and a final contract was agreed upon. (Simmons Dep. at 116.)

the-clock  availability,  critical  incident  teams,  translation services,  treatment  excellence  program  and  reputation  in  the railroad  industry.   (Id. at 117-18; Conley Aff. Ex. L.)   Well Place's  provision  of  EAP  services  saved  Canadian  Pacific  over $70,000 between May 2007 and June 2008.  (Conley Aff. Ex. H.)

Kirkeberg brought this action on November 15, 2007, asserting discrimination, retaliation and failure to accommodate claims under the Americans with Disabilities Act ("ADA"), Age Discrimination in Employment Act ("ADEA"), Minnesota Human Rights Act ("MHRA") and Minnesota  Whistleblower  Act  ("Whistleblower  Act").[6]   Canadian Pacific  moved  for  summary  judgment  on  all  counts  on  October  6, 2008.

## DISCUSSION

### I.   Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that  summary  judgment  is  appropriate  "if  the  pleadings, depositions,  answers  to  interrogatories,  and  admissions  on  file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  A fact is material only when its

---

[6] The court dismissed Kirkeberg's defamation claim pursuant to the parties' stipulation on August 19, 2008.

resolution affects the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party.  See id. at 252.

On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the nonmoving party. See id. at 255.  The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings but must set forth specific facts sufficient to raise a genuine issue for trial.  See Celotex, 477 U.S. at 324.  Moreover, if a plaintiff cannot support each essential element of his claim, summary judgment must be granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial.  Id. at 322-23.

## II.  Substantive Claims

A court applies McDonnell Douglas's burden-shifting analysis to discrimination and retaliation claims under the ADEA, ADA, MHRA and Whistleblower Act in cases such as this where there is no direct evidence of discriminatory or retaliatory intent.  See Baucom v. Holiday Cos., 428 F.3d 764, 766 (8th Cir. 2005) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)); see also Buytendorp v. Extendicare Health Servs., 498 F.3d 826, 834 (8th Cir. 2007); Mershom v. St. Louis Univ., 442 F.3d 1069, 1074 (8th Cir. 2006).  Under McDonnell Douglas, the plaintiff must first

8

establish a prima facie case. <u>Baucom</u>, 428 F.3d at 766. The burden of production then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions. <u>Id.</u> If the defendant satisfies its burden, the plaintiff must show that the defendant's reason is pretext for unlawful discrimination. <u>Id.</u> at 766-67. Pretext can be shown "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." <u>Tex. Dep't of Comty. Affairs v. Burdine</u>, 450 U.S. 248, 256 (1981). Claims for failure to accommodate are analyzed "under 'a modified burden-shifting analysis,' because discriminatory intent is not at issue." <u>Mershom</u>, 442 F.3d at 1074 (quoting <u>Peebles v. Potter</u>, 354 F.3d 761, 766 (8th Cir. 2004)).

### A.   Disability Claims

#### 1.   Discrimination

Kirkeberg first argues that Canadian Pacific unlawfully discriminated against him because of his eye problems and hepatitis C infection. To establish a prima facie case of disability discrimination under the ADA and the MHRA, Kirkeberg must establish that: (1) he was disabled; (2) he was qualified to perform the essential functions of the job, with or without reasonable accommodation; and (3) he suffered an adverse employment action due to his disability. <u>Libel v. Adventure Lands of Am., Inc.</u>, 482 F.3d

1028, 1034 (8th Cir. 2007) (citation omitted); Burchett v. Target Corp., 340 F.3d 510, 516 (8th Cir. 2003).  Canadian Pacific argues that Kirkeberg was not disabled.

A "disability" under the ADA is "a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual."  42 U.S.C. § 12102(2)(A).  An individual is disabled under the MHRA if he "'has a physical, sensory, or mental impairment which materially limits one or more major life activities.'"  Hoover v. Norwest Private Mortgage Banking, 632 N.W.2d 534, 543 (Minn. 2001) (quoting Minn. Stat. § 363.01, subdiv. 13 (2000)).  A "material limitation" is less stringent than a "substantial limitation."  Id. at 543 n.5.  Nevertheless, the relevant ADA regulations aid a court in determining whether an impairment materially limits a major life activity under the MHRA.  Mallon v. U.S. Physical Therapy, Ltd., 395 F. Supp. 2d 810, 817 n.1 (D. Minn. 2005).

Major life activities are those "that are of central importance to most people's lives."  Toyota Motor Mfg. v. Williams, 534 U.S. 184, 198 (2002).  These include functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, working, thinking and concentrating. See Gretillat v. Care Initiatives, 481 F.3d 649, 652 (8th Cir. 2007) (citing 29 C.F.R. § 1630.2(I) (2006)); Battle v. United Parcel Serv., Inc., 438 F.3d 856, 861 (8th Cir. 2006) (citations

10

omitted).  A substantial limitation exists if "an individual 'is significantly restricted as to the condition, manner or duration under which ... the average person in the general population can perform the same major life activity.'"  Gretillat, 481 F.3d at 652 (quoting 29 C.F.R. 1630.2(j)(1)(ii)).  A court evaluates claims of disability on an individual basis and considers mitigating measures to determine "whether an individual's impairment substantially limits a major life activity."  Ristrom v. Asbestos Workers Local 34 Joint Apprentice Comm., 370 F.3d 763, 772 (8th Cir. 2004) (citing Sutton v. United Air Lines, Inc., 527 U.S. 471, 482 (1999); Murphy v. United Parcel Serv., Inc., 527 U.S. 516, 521 (1999)).[7] Individuals with monocular vision are not per se disabled. Albertson's, Inc. v. Kirkingburg, 527 U.S. 555, 567 (1999). Nevertheless, such individuals "ordinarily will meet the [ADA's] definition of disability [by offering evidence] that the extent of the limitation [in] their own experience, as in loss of depth

_____

[7] Amendments to the ADA effective January 1, 2009, expressly abrogated Sutton's instruction to consider "the ameliorative effects of mitigating measures," and Williams's narrow construction of a substantial limitation "in performing a major life activity." ADA Amendments Act of 2008, Pub. L. No. 110-325, § 2(b), 122 Stat. 3553, 3554.  Kirkeberg does not argue for retroactive application of the amendments, and the court determines that retroactive application is not warranted.  See Landgraf v. USI Film Prods., 511 U.S. 244, 280 (1994) (no retroactive application of legislation if it "would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed"); see also Elbert v. True Value Co., No. 08-1222, 2008 U.S. App. LEXIS 26103, at *4 (8th Cir. Dec. 19, 2008) (presumption against retroactive application of legislation).

perception and visual field, is substantial." Id. (quotation omitted).

Kirkeberg maintains that his monocular vision substantially and materially limited his ability to see, walk, read, concentrate, think, drive and work.  Kirkeberg, however, testified that his vision problems did not affect his ability to work and have not limited his consideration of other jobs.  (Kirkeberg Dep. at 54-55.)  Moreover, Kirkeberg was only prevented from driving while he had an eye infection in February and March 2007, his monocular vision has made him only "less able to navigate" while walking and he can read "fairly normally."  (Kirkeberg Dep. at 52-55.) Therefore, Kirkeberg is not substantially or materially limited in his ability to work, drive, walk, read, think or concentrate. See Rubink v. Roadway Express, Inc., No. 01-3380, 2002 U.S. App. LEXIS 9920, at *2-4 (8th Cir. May 20, 2002) (monocular individual's ability to work not substantially limited); see also Anderson v. N.D. State Hosp., 232 F.3d 634, 636 (8th Cir. 2000) (assuming without deciding that driving is major life activity).  Finally, Kirkeberg has not provided medical evidence detailing a substantial loss of depth perception and visual field.  See Ristrom, 370 F.3d at 769 ("[A]n individual cannot prove disability status by merely submitting evidence of a medical diagnosis of an impairment." (quotation omitted)).  Rather, Kirkeberg testified that he is "less able to navigate" on foot and that he bumps into people and trips

12

over objects that are low on his left side. (Kirkeberg Dep. at
54.) This testimony, however, does not support a substantial or
material limitation in Kirkeberg's ability to see. See EEOC v.
United Parcel Serv., Inc., 306 F.3d 794, 801-03 (9th Cir. 2002) (no
disability because monocular vision did not prevent two individuals
from using eyesight as most others do for daily life); Still v.
Freeport-McMoran, Inc., 120 F.3d 50, 52 (5th Cir. 1997) (monocular
individual not substantially limited); see also Rohland v. St.
Cloud Christian Sch., No. A04-821, 2004 Minn. App. LEXIS 1415, at
*22 (Minn. Ct. App. Dec. 21, 2004) ("Vision problems do not
constitute a disability [under the MHRA] when through medication,
eye glasses, assistive devices, or the body's own ability to
compensate, the individual's disability is mitigated and the
individual is not substantially limited in the major activity of
seeing."). But cf. Doane v. City of Omaha, 115 F.3d 624, 627-28
(8th Cir. 1997) (blindness in one eye substantially limits major
life activity of seeing if mitigating measures not considered).
Therefore, the court determines that Kirkeberg has not established
a fact issue as to whether his monocular vision substantially or
materially limited his participation in major life activities.

Kirkeberg further alleges that he was disabled because of the
hepatitis C infection. He indicates that the infection caused
"bloody noses, 'brain fog,' fatigue, sleep disturbances, painful
joints, painful muscles, weakness, headaches, depression,

13

irritability and cognitive changes all of which made work more difficult and made reading, thinking and concentrating harder." (Kirkeberg Aff. ¶ 7.) Kirkeberg, however, has provided no evidence as to the degree or duration of these side effects. Therefore, he has not shown that the hepatitis C infection substantially or materially limited a major life activity. See Gretillat, 481 F.3d at 652 (court considers "nature, severity, duration, and long-term impact of the impairment"). Accordingly, the court determines that Kirkeberg was not actually disabled.

Even if an individual is not actually disabled, however, he is considered "disabled" under the ADA and MHRA if he is "regarded as" having a disability. See 42 U.S.C. § 12102(2)(C); Minn. Stat. § 363A.03, subdiv. 12(3). One situation in which an individual is regarded as having a disability is when an employer "mistakenly believes an actual, non-limiting impairment substantially [or materially] limits one or more of the individual's major life activities." Pittari v. Am. Eagle Airlines, Inc., 468 F.3d 1056, 1061 (8th Cir. 2006) (citing Sutton, 527 U.S. at 489).[8]

_____

[8] The new ADA amendments provide that:

An individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited under [the ADA] because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity.

(continued...)

14

Kirkeberg argues that Simmons knew he had eye problems and hepatitis C, and that Simmons treated him poorly as a result. Nevertheless, even if Simmons became hostile toward Kirkeberg after learning of Kirkeberg's impairments, no evidence suggests that Simmons believed that those impairments substantially or materially limited Kirkeberg's major life activities. Instead, the evidence shows that Simmons thought that Kirkeberg was competently performing his job. Indeed, Simmons supported Kirkeberg's request for a pay raise early in 2007 and did not question the doctor's judgment that Kirkeberg could "perform normal daily functions." (Simmons Dep. at 4, 65.) Therefore, the court determines that Simmons did not regard Kirkeberg as disabled, and Kirkeberg cannot establish a prima facie case of disability discrimination under the ADA or MHRA.

Moreover, even if Kirkeberg could establish a prima facie case, he cannot show that Canadian Pacific's cost-saving and resource-enhancing rationales for outsourcing the EAP functions were pretext for unlawful discrimination. Kirkeberg first argues that Canadian Pacific's proffered rationales are pretextual because Simmons began thinking about outsourcing the EAP function at the time he allegedly learned of Kirkeberg's hepatitis C diagnosis,

_____

[8](...continued)
ADA Amendments Act of 2008, Pub. L. No. 110-325, § 4(a)(3)(A), 122 Stat. 3553, 3555. As noted above, however, these amendments do not apply to the present action.

actively pursued outsourcing only after becoming upset at Kirkeberg on March 5, 2007, and terminated Kirkeberg hastily before Kirkeberg began hepatitis C treatment.   Simmons's decision, however, was approved by Frankenberg and Cunningham, and the record contains no evidence that their approval was influenced by Kirkeberg's health problems.   Moreover, Simmons's initial discussions about outsourcing were with Wilson, who had never met Kirkeberg and knew nothing about his medical conditions.   (Wilson Dep. at 8.) Therefore, the timing of Simmons's actions does not create a fact issue as to whether Canadian Pacific's justification for outsourcing the EAP function was pretext for unlawful discrimination.

Kirkeberg also attempts to establish pretext by challenging the necessity and effect of outsourcing his position.   Kirkeberg argues that Simmons was not directed by Canadian Pacific management to cut EAP costs, that Kirkeberg already provided sufficient services and that the savings identified by Canadian Pacific as a result of hiring Well Place are illusory.   It is undisputed, however, that Simmons had a general duty to cut costs so long as the cuts would not affect services.   The evidence also shows that Well Place provides greater resources than Canadian Pacific maintained in-house.   Moreover, Kirkeberg has not presented any facts to challenge Canadian Pacific's cost-savings claim.   Rather, Kirkeberg maintains that the figures in the record exclude costs

for training, travel and critical incident response, but he does not support this claim with evidence.  Therefore, even if Kirkeberg was disabled under the ADA and MHRA, he cannot establish that Canadian Pacific's termination of his position was pretext for unlawful discrimination.  See Kincaid v. City of Omaha, 378 F.3d 799, 805 (8th Cir. 2004) ("[T]he employment-discrimination laws have not vested in the federal courts the authority to sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers, except to the extent that those judgments involve intentional discrimination." (quotation omitted)).  Accordingly, the court grants summary judgment on this claim.

### 2.    Failure to Accommodate and Retaliation

Kirkeberg next argues that Canadian Pacific violated the ADA by not providing him with reasonable accommodations.  The ADA and MHRA require employers to provide reasonable accommodations to disabled employees.  42 U.S.C. § 12112(b)(5)(A); Minn. Stat. § 363A.08, subdiv. 6.  An employee establishes a violation of this duty by showing he is a qualified individual with a disability and the employer knew of the disability but did not provide reasonable accommodations.  EEOC v. Sears, Roebuck & Co., 417 F.3d 789, 797 (8th Cir. 2005) (citation omitted).  Kirkeberg's claim fails because he has not established a fact issue as to whether he is disabled.  Nevertheless, an "individual who is adjudged not to be

17

a qualified individual with a disability may still pursue a retaliation claim under the ADA as long as [he] had a good faith belief that the requested accommodation was appropriate." Heisler v. Metro. Council, 339 F.3d 622, 632 (8th Cir. 2003) (quotations omitted).

To support a prima facie case for retaliation under the ADA and MHRA, Kirkeberg must show that he "engaged in a protected activity, suffered an adverse employment action, and that there is a causal connection between the two." Id. at 632. Requesting an accommodation is a protected activity and termination of employment is an adverse action. Id. Kirkeberg argues that the temporal proximity between his March 5, 2007, statement about working from home and Simmons's same-day e-mail to Wilson about eliminating the EAP position establishes causation. See Mitchell v. Iowa Prot. & Advocacy Servs., 325 F.3d 1011, 1014 (8th Cir. 2003) (temporal proximity between protected activity and adverse employment action may prove causation). Assuming Kirkeberg has established a fact issue as to causation, he has not, as discussed above, done the same as to pretext. Accordingly, the court grants summary judgment on Kirkeberg's failure to accommodate and retaliation claims under the ADA and MHRA.

**B.   Age Claims**

**1.   Discrimination**

The ADEA and MHRA prohibit an employer from "discharg[ing] any individual or otherwise discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."   29 U.S.C. § 623(a)(1); see also Minn. Stat. § 363A.08, subdiv. 2; Carraher v. Target Corp., 503 F.3d 714, 716 (8th Cir. 2007) (same analysis applies to age discrimination claims under ADEA and MHRA).   To establish a prima facie case of age discrimination where there has been a reduction in force, the plaintiff must show: "(1) he is over 40 years old; (2) he met the applicable job qualifications; (3) he suffered an adverse employment action; and (4) there is some additional evidence that age was a factor in the employer's action."   Ward v. Int'l Paper Co., 509 F.3d 457, 460 (8th Cir. 2007) (citation omitted).

The first three factors are uncontested in this case, and Kirkeberg maintains that the fourth factor is satisfied because no younger employees had their positions eliminated and younger employees were allowed to work from home, were not told to take FMLA leave and received promotions and pay increases that Canadian Pacific denied Kirkeberg.   Again, however, assuming that Kirkeberg has stated a prima facie case of age discrimination, he has not established a fact issue regarding pretext.   See Dammen v. UniMed

Med. Ctr., 236 F.3d 978, 981 (8th Cir. 2001) ("When an employer articulates a nondiscriminatory reason for an employee's discharge ... 'the factual inquiry proceeds to a new level of specificity.'" (quoting U.S. Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 715 (1983)). Therefore, the court grants summary judgment on this claim.

### 2.   Retaliation

Kirkeberg further argues that Canadian Pacific unlawfully retaliated against him for his support of Ward. To establish a prima facie case of retaliation in violation of the ADEA and MHRA, Kirkeberg must present evidence that he engaged in a protected activity, suffered an adverse employment action and a causal connection between the two. Lewis v. St. Cloud State Univ., 467 F.3d 1133, 1138 (8th Cir. 2006).

More than two years elapsed between the resolution of Ward's suit against Canadian Pacific and Kirkeberg's termination. Kirkeberg offers no additional evidence to support a causal connection between these events. Accordingly, Kirkeberg has not established a prima facie case of retaliation, and summary judgment is warranted on this claim. See id. ("We have held that an interval as brief as two months did not show causation for purposes of establishing a retaliation claim.").

C.   **Whistleblower Act Claim**

The Whistleblower Act forbids an employer from terminating an employee because:

> (c) the employee refuses an employer's order to perform an action that the employee has an objective basis in fact to believe violates any state or federal law or rule or regulation adopted pursuant to law, and the employee informs the employer that the order is being refused for that reason.

Minn. Stat. § 181.932, subdiv. 1.  A plaintiff establishes a prima facie case by showing that (1) he engaged in a statutorily protected activity, (2) he suffered an adverse employment action and (3) there is a causal connection between the two.  See Cokley v. City of Otsego, 623 N.W.2d 625, 630 (Minn. Ct. App. 2001) (citing Hubbard v. United Press Int'l, Inc., 330 N.W.2d 428, 444 (Minn. 1983)).

Kirkeberg argues that he engaged in protected conduct by refusing to disclose information about EAP participants to Simmons. Assuming that Kirkeberg engaged in statutorily protected activity, he has not shown a causal connection between that activity and the termination of his position.  The only dated evidence of a request by Simmons for allegedly confidential information is the November 13, 2006, email.  The temporal proximity between Kirkeberg's termination and his refusal of this request for information does not support causation.  See Freeman v. Ace Tel. Ass'n, 404 F. Supp. 2d 1127, 1141 (D. Minn. 2005) ("A time gap between a report and a termination can undermine the claim of a connection between the

21

two."). Moreover, even if Simmons requested confidential information shortly before termination of Kirkeberg's position, Kirkeberg acknowledged that he refused Simmons's requests on several occasions without experiencing recriminations. This weighs against a causal connection. See id. at 1142. Accordingly, the court determines that Kirkeberg cannot establish a prima facie case of retaliation. Moreover, even if Kirkeberg could make such a case, as noted above, he has not established that Canadian Pacific's justification for his termination is pretext for unlawful retaliation. Therefore, the court grants summary judgment on this claim.

## CONCLUSION

Based upon the above, **IT IS HEREBY ORDERED** that Canadian Pacific's motion for summary judgment [Doc. No. 20] is granted.

**LET JUDGMENT BE ENTERED ACCORDINGLY**

Dated:  January 26, 2009

                                        s/David S. Doty
                                        David S. Doty, Judge
                                        United States District Court